HOT SPRINGS RAILROAD v. TRIPPE & Co.

RAILROADS: *Injury to goods: Several carriers.*

An association among carriers for the transportation of through freights and a division of the receipts in prescribed proportion, does not constitute a partnership, nor render the carriers jointly liable for loss or injury occurring to goods transported.

APPEAL from *Garland* Circuit Court.
Hon. J. B. WOOD, Circuit Judge.

*John M. Moore* for appellant.
The bill of lading, of itself, was not competent, as against defendant, to establish a partnership, or joint relation. It is only after the relation is established that the
30

acts of one party are received to affect the other. *29 Ark.*, *526*.

*Hutchinson on Carriers*, after an extended review of the authorities, sums up the rules on this subject at *section 169*, as follows : " From these cases it may be deduced : First, that where carriers over different routes have associated themselves under a contract, on a division of the profits of the carriage in certain proportions, or of the receipts from it, after deducting any of the expenses of the business, they become jointly liable as partners to third persons ; but that where the agreement is that each shall bear the expenses of his own route and of the transportation upon it, and that the gross receipts shall be divided in proportion to distance or otherwise, they are partners neither *inter se* nor as to third persons, and incur no joint liability.

" Secondly, that where they jointly employ a common agent in the prosecution of a joint enterprise as carriers, they become jointly liable for his defaults, but do not become responsible for each other's acts merely by reason of the employment of such common agent. Nor will a contract for through transportation over several lines made by him, although authorized by an agreement between them, create a joint liability or a liability for the defaults of each other, it not being shown that such companies were jointly interested in the expenses of the transportation.

" Thirdly, that in order to hold one carrier responsible for the defaults of another, a partnership between them must be shown, either expressed or implied from the circumstances; or it must appear that one was acting in the transportation as the agent of the other against whom the recovery is sought; and that the mere employment of a common or joint agent, with authority to contract for through transportation over connecting routes, under an arrangement for the division of the receipts from such

transportation, in proportion to distance or other service, will generally constitute neither such a partnership nor agency, each for the other, as will make them jointly liable for each other's acts in the transportation."

This court, in *Packard et al. v. Taylor, Cleveland & Co.*, *35 Ark.*, *401-2*, say: "Justice Redfield, in the case of *Farmers and Mechanics Bank v. Champlain Transfer Company*, *23 Vt.*, *309*, considered the better and more just and rational rule to be that, in the absence of a special contract, each carrier is only liable to the extent of his own route, and the safe storage and delivery to the next carrier." "And," say the court, "to the same purport are a vast concourse of American decisions."

See, also, *Darling v. Boston and Worc. Railroad Company*, *93 Mass.*, *298*.

1. The instruction given by the court at the instance of plaintiffs was abstract and misleading. There was no evidence tending to establish a joint relation or partnership between the carriers; and the court should have instructed the jury that the defendant was not liable unless the injury occurred on its road. *Tobins et al. v. Jenkins et al.*, *29 Ark.*, *151.*

2. The instruction does not state the law correctly. An association among carriers for the transportation of through freights and division of the receipts in prescribed proportions, does not constitute a partnership or render the carriers jointly liable. *Converse v. N. & N. Y. Transportation Company*, *33 Ct.*, *166-179*.

3. The first instruction asked by the defendant should have been given. As originally framed it stopped at the star; being refused, what follows the star was added—the exception was reserved to the refusal to give it as modified. See authorities cited above.

4. According to the special findings the goods were

injured before they came into the custody of the defendant. It is true the jury also found that the defendant was jointly associated with the other carriers in the transportation of the goods—but all the evidence on that point was clearly and distinctly to the contrary. There was not only a total want of evidence to sustain the first finding, but it was contrary to the whole of the evidence. The court erred in submitting the question to the jury; the jury found contrary to the evidence; it also found contrary to the instructions of the court. The court should have set aside the general verdict and entered judgment for defendant on the special findings. *Gantt's Digest 4680; L. R. & F. S. Ry. v. Miles*, 40 Ark.; *Proffatte on Jury Trials*, sec. 439.

*R. G. Davies* for appellees.

There is no error in the instruction of the court, and the verdict of the jury is in accordance with the evidence and instructions. The instructions given for plaintiff were in accordance with instructions asked for by defendant, and the special finding of the jury according to defendant's instructions entitled plaintiff to a verdict, and the amount of the verdict was exactly what the damage was, as assessed by the parties, and not excessive.

SMITH, J. The railroad company was sued as a common carrier for damage done to a lot of dry goods *in transit* from New York to Hot Springs. The Baltimore and Ohio Railroad Company had signed a "through" bill of lading between the two points, guaranteeing a certain rate of freight per hundred weight for the entire distance. There was no stipulation for exemption from liability for losses beyond its own route, but the Baltimore and Ohio road expressly reserved the right to forward the goods by any rail-

road line between the points of shipment and destination. The goods were sent to St. Louis, and were there delivered to the St. Louis, Iron Mountain and Southern Company, which carried them to Malvern and turned them over to the defendant to be transported to Hot Springs. When the packages were opened by the consignees, it was discovered that the goods had been injured by wetting.

The jury returned a general verdict for the plaintiffs, but in response to interrogatories propounded to them, accompanied it with the following special findings:

"1. Do you find from the evidence that the Hot Springs Railroad Company was jointly associated with the other carriers in the carriage of said goods?"

Answer: "We do."

"2. Do you find that the goods were injured while they were in the possession of the defendant; or do you believe they were injured before they were delivered to the defendant?"

Answer: "We do believe said goods were injured *before reaching Malvern, Arkansas.*"

The jury thus substantially found that the injury did not occur on the defendant's road. And as that finding is abundantly supported by the evidence, we are not at liberty to uphold the judgment rendered upon the general verdict upon the theory that the jury might have presumed that the goods remained uninjured until they came to the hands of the last carrier, and that the loss occurred through its fault. Such a presumption could be indulged only in the absence of all evidence to the contrary. *Laughlin v. C. & N. Y. Ry. Co., 28 Wis., 204; Smith v. N. Y. C. R. Co., 43 Barb., 225.*

The liability of the defendant, if it is liable at all, must, therefore, depend upon the relation it sustained to the other carriers in regard to the transportation of the goods.

All the evidence upon that point was the bill of lading, to which the defendant was not a party, and which did not mention even its name, specifications of the rate of charges on first-class freight from New York to Hot Springs indorsed on the bill of lading, and the testimony of defendant's superintendent as follows:

" The charge of each railroad company was separate and distinct from the charge of the other companies. The way-bill contains, in one column, the charges that were paid by the St. Louis, Iron Mountain and Southern Railway Company, which is the freight on the goods from New York to St. Louis; in another column it contains the freight charged by the St. Louis, Iron Mountain and Southern Railway Company from St. Louis to Malvern, and in another and separate column, the freights to be charged by defendant for carrying the goods from Malvern to Hot Springs. The defendant collected all the freight due on the goods from New York to Hot Springs; and paid to the St. Louis, Iron Mountain and Southern Railway Company the freight due it, and the charges it had paid for freight due to St. Louis, and reserved for itself the freight for carrying the goods from Malvern to Hot Springs. The defendant had informed the St. Louis, Iron Mountain and Southern Railway Company of its rate for freight upon its line, and the St. Louis, Iron Mountain and Southern Railway Company made out the freight from Malvern to Hot Springs from the rate as furnished it. Neither company had any connection with, or interest in, the freights due to the other. They did not divide the earnings over their respective lines or share the expense, but the charges of each company were distinct and independent, both as to the earnings and expense on its line."

The court gave the following instruction at the instance of the plaintiff, and against the objection of the defendant:

Hot Springs Railroad v. Trippe & Co.

"The court instructs the jury that when several distinct corporations associate together and form a continuous line of common carriers, each being empowered to contract for freight for the whole line and to receive pay for the same, which is to be divided in prescribed proportions, all such carriers, so associated, are jointly liable for losses or injuries upon any part of the line; and if they believe that the Hot Springs Railroad was so associated with other common carriers, either from St. Louis, Missouri, or New York, that it is liable for the said losses or injuries whether upon its line or that of any carrier with whom said Hot Springs Railroad is associated."

The defendant asked the following instruction, but the court refused it:

1. "If the jury believe from the weight of the evidence that the plaintiff's goods were injured before they came into the possession of the defendant, they will find for the defendant   *   *   unless they further find that the defendant and the other railroad companies engaged in the transportation of said goods are jointly liable to plaintiffs for such injury; and in order to render said companies jointly liable the jury must find from the evidence that they were jointly interested."

In *Darling v. B. & W. R. Co.*, *93 Mass.*, *295*, a similar question came before the Supreme Judicial Court of Massachusetts. It was there said: "Payment of freight in advance is generally inconvenient, and as the goods are generally presumed to be of sufficient value to pay the freight, an arrangement is sometimes made by which each carrier, subsequent to the first, pays what is due when the goods are delivered to him, and the last carrier collects the whole bill from the consignee. Such an arrangement creates no partnership or joint liability. If a further arrangement is made between the carriers that the freight bills shall not

SEVERAL CARRIERS:<br>Joint liability.

be paid on the receipt of each parcel of goods, but an account shall be kept on each line on a particular route, and periodically settled, this will not create a partnership or joint liability, for each line charges separately for its own freight. If it is further arranged that each line shall charge only a stipulated rate of freight, so that any customer can be informed beforehand what the amount of freight will be to a given place of destination, this does not create a partnership or joint liability.

"Arrangements of this character are convenient to the public because they enable carriers to transport goods at low rates. They are inconvenient in some respects. They render it difficult to obtain compensation for injuries to goods, because it is difficult for the owner to prove where the injury was done, and, if he can prove it, he may be obliged to carry on a litigation in a distant State. But if the law is adhered to and contracts are enforced according to their legal interpretation, business will regulate itself, and methods will be discovered to avoid inconveniences."

See, also, *Converse v. N. & N. Y. Transportation Co.*, *33 Ct.*, *166*, upon the point that an association among carriers for the transportation of freights and a division of the receipts in prescribed proportions, does not constitute a partnership, nor render the carriers jointly liable.

The general verdict and the first special finding of facts are unsupported by testimony. And the instruction for the plaintiff copied above was inapplicable to the state of facts in proof. The court likewise erred in refusing the defendant's prayer for the above mentioned direction.

The remedy of the plaintiff was either against the company upon whose line the damage occurred, or against the company which signed the bill of lading.

Reversed for a new trial.